# EXHIBIT 6

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.47 Filed 06/30/21 Page 2 of 13

TGINN Jets, LLC v. Meathe, Not Reported in Fed. Supp. (2019)

2019 WL 1571187
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

TGINN JETS, LLC, J.R. Slavik & Associates II, and Lockwood Family Investment LP, Plaintiffs,
v.
Cullan MEATHE, and Hampton Ridge Properties, LLC, Defendants.

No. 19-10105
|
Signed 04/11/2019

**Attorneys and Law Firms**

C. William Garratt, Donald R. Bachand, III, Garratt and Bachand, P.C., Bloomfield Hills, MI, for Plaintiffs.

Costanzo Z. Lijoi, Bellanca, Beattie, Harper Woods, MI, for Defendants.

### ORDER SETTING EVIDENTIARY HEARING ON JURISDICTIONAL MATTERS

Nancy G. Edmunds, United States District Judge

**\*1** Plaintiffs filed their complaint in the Oakland County Circuit Court based exclusively on Michigan state law, but Defendants removed this matter to this Court based on diversity jurisdiction. On January 15, 2019, the Court issued an order to show cause, ordering both parties to address the allegations of fraudulent joinder set forth by Defendants in their Notice of Removal. (Dkt. 2.) The Court also ordered Defendants to properly assert the citizenship of all parties. Defendants filed an answer to the Court's order, and Plaintiffs responded to Defendants. (Dkts. 3, 4.)

Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). To establish jurisdiction based on diversity, the amount in controversy must exceed $ 75,000, and diversity of citizenship must exist. 28 U.S.C. § 1332(a). Complete diversity requires all parties on one side of the controversy to be of diverse citizenship from all parties on the other side. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-29 (1989). Defendants, as the removing parties, bear the burden of showing that federal jurisdiction exists at the time of removal. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6thCir. 2006).

Defendants initially asserted that Plaintiffs are residents of Michigan and Defendant Meathe is a resident of Florida. (Dkt. 1, Pg ID 2.) They argued that the citizenship of Defendant Hampton Ridge Properties, LLC ("Hampton Ridge"), a Michigan limited liability company, did not defeat diversity because Hampton Ridge was fraudulently joined. However, as noted in the Court's order to show cause, a limited liability company has the citizenship of its members. *See V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010). Defendants now assert that the sole member of Hampton Ridge is co-defendant Meathe, so it too is a citizen of Florida. (*See* dkt. 3, Pg ID 28.) Thus, even if there was no fraudulent joinder and Hampton Ridge is a proper party to this suit, they argue, there is complete diversity in this case. Defendants also reassert their allegations that Hampton Ridge was fraudulently joined in this case. (*Id.* at Pg ID 28-30.) Plaintiffs take the exact opposite position. They argue that Hampton Ridge is a proper party in this suit, but even if was fraudulently joined and should therefore be dismissed from this suit, there is still no diversity in this case. (Dkt. 4.) They dispute that Plaintiffs are only citizens of Michigan.

The Court will first address Defendants' allegations of fraudulent joinder. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432-33 (6th Cir. 2012) (internal quotation marks and citation omitted). The relevant inquiry in determining whether a non-diverse party has been fraudulently joined is whether there is a colorable basis for predicting that the plaintiff may recover against that party. *Id.* When a non-diverse party has been shown to be fraudulently joined, the proper procedure is to dismiss that party from the suit. *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (unpublished).

**\*2** In light of Defendants' assertion that Hampton Ridge has the same citizenship as Defendant Meathe (and Plaintiff does not dispute this point), fraudulent joinder has become a non-issue in this case. Either both Meathe and Hampton Ridge are non-diverse (and remand is appropriate) or they are both diverse (and this case is appropriately before the Court). In either case, whether liability can be imposed on Hampton

**TGINN Jets, LLC v. Meathe, Not Reported in Fed. Supp. (2019)**

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.48 Filed 06/30/21 Page 3 of 13

Ridge in this suit is not determinative of whether the Court has jurisdiction. Thus, there is no need for the Court to resolve the fraudulent joinder issue.

Plaintiffs also argue that if Defendants are citizens of Florida as they claim to be,[1] complete diversity is lacking in this case because some of the plaintiffs are citizens of Florida as well. Plaintiffs first assert that either one or both of the defendants are members of Plaintiff TGINN Jets, LLC ("TGINN"), and thus it too is a citizen of Florida on that basis. (Dkt. 4, Pg ID 41.) This fact alone, if proven, would defeat diversity. However, the only evidence Plaintiffs have provided in support of this assertion is an operating agreement for TGINN allegedly signed by Defendant Meathe. (*See* dkt. 4-5, Pg ID 81.)

[1] Plaintiffs question whether Defendants are indeed citizens of Florida. (*See* dkt. 4, Pg ID 40.) Defendants, however, have submitted the sworn affidavit of Defendant Meathe, attesting that he has lived in the state of Florida since 2002 and has no connection to Michigan, other than to visit his mother once a year. (Dkt. 3, Pg ID 32-34.) Plaintiffs have provided no evidence to the contrary.

Plaintiffs also assert that one of Plaintiff Slavik & Associates' members, Joseph Ronald Slavik, is a citizen of Florida. (Dkt. 4, Pg ID 39.) Slavik & Associates, in turn, they assert, is a member of TGINN, so the citizenship of Mr. Slavik impacts both Plaintiffs TGINN and Slavik & Associates. (*Id.* at Pg ID 40.) To prove that Mr. Slavik is a citizen of Florida, and not a citizen of Michigan as Defendants had stated he was, Plaintiffs have provided his sworn affidavit. (Dkt. 4-7.) The affidavit of Mr. Slavik states that he resides in Florida. He has also provided a copy of his current Florida driver's license dated January 18, 2018. However, state citizenship is not based solely on residence. Rather, for purposes of diversity, state citizenship is equated with domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (citations omitted). "A person's previous domicile is not lost until a new one is acquired. Establishment of a new domicile is determined by two factors: residence in the new domicile, and the intention to remain there." *Id.* Mr. Slavik's affidavit implies that he recently moved to Florida and does not indicate whether he intends to remain there. Thus, it is unclear whether he has lost his previous domicile (presumably Michigan) and acquired a new domicile in Florida. Because the Court does not have before it sufficient evidence to establish the citizenship of Plaintiffs, **the Court will convene an evidentiary hearing on April 24, 2019 at 10:00 a.m.** on the issue of whether this Court has diversity jurisdiction over this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1571187

**2000 WL 33421411**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Alfred URBANSKI, Personal Representative of
the Estate of Nancy Urbanski, Deceased, Virginia
Drucz and Agnes Harris, Plaintiffs-Appellants,
v.
SEARS ROEBUCK & COMPANY,
Maryanna Harrington and Daniel
Hartley, Defendants-Appellees.

No. 211223.
|
May 2, 2000.

Before: HOOD, P.J., and SMOLENSKI and TALBOT, JJ.

**Opinion**

PER CURIAM.

***1** Plaintiffs appeal as of right an order granting defendants' motions for summary disposition in this employment discrimination action. We affirm.

Plaintiffs,[1] former employees of defendant Sears, Roebuck & Co. brought this action alleging discrimination under both the Michigan Civil Rights Act, M.C.L. § 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* and the Handicapper's Civil Rights Act (HCRA),[2] M.C.L. § 37.1101 *et seq.;* MSA 3.550(101) *et seq.,* and alleging intentional infliction of emotional distress. In their first amended complaint, plaintiffs added a count alleging that defendants retaliated against plaintiff Nancy Urbanski for filing a claim under the Worker's Disability Compensation Act (WDCA), M.C.L. § 418.301(11); MSA 17.237(301)(11).

[1] Nancy Urbanski, Virginia Drucz and Agnes Harris will be referred to as "plaintiffs." Because Nancy Urbanski died during the pendency of this matter, Alfred Urbanski was appointed personal representative of her estate and is substituted as the proper party plaintiff on her behalf.

[2] The HCRA is now known as the Persons With Disabilities Civil Rights Act (PWDCRA).

Plaintiffs Nancy Urbanski, Agnes Harris and Virginia Drucz began working for Sears in 1969, 1970 and 1973, respectively. Harris was sixty-five when she retired from Sears in September 1994, Harris was sixty-two when she retired in October 1994, and Urbanski was fifty-three when she took a medical leave of absence in 1995.

During the time period at issue, all three plaintiffs worked at Sears' Livonia Service Center. In the spring of 1993, the service center underwent a centralization process and some of the work performed at the Livonia Service Center was transferred to another service center. Most of the Livonia employees were transferred to another location, but plaintiffs and a few others remained. Defendant Daniel Hartley became the Branch Manager of the service center in May 1993. He oversaw operations at the service center. Defendant Maryanna Harrington worked as a human resource specialist at the service center.

Plaintiffs allege that, after the centralization of the service center, defendants harassed them and made comments and engaged in conduct that constituted discrimination based on age and handicap. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiffs failed to establish a genuine issue of material fact with regard to any of their claims. The trial court ultimately granted those motions, dismissing plaintiffs' complaint in its entirety.

On appeal, plaintiffs abandon some of their claims. They appeal only the trial court's dismissal of their age discrimination claims, Harris' handicap discrimination claim and Urbanski's claim for retaliation.

In support of their claims, plaintiffs provided deposition testimony recounting their treatment after May 1993. Plaintiff Harris testified that she was assigned to answer the telephones and was permitted no assistance for about two weeks, even when she was unable to handle all of the telephone calls that came in at one time. She testified that defendants yelled at her, "Agnes, answer the phone," and that they were "loud and boorish". After returning from a vacation in September 1993, Harris discovered another employee, who was significantly younger, at her desk. She learned that her

belongings had been moved to another desk. At this time, Harris claims, she decided that she had had enough. She did not discuss the matter with defendants, but became depressed and decided to retire to "get away from Sears, Roebuck and Dan and Maryanna, the harassment." Harris had not planned on retiring until she reached age seventy. Harris had never been disciplined or demoted and was never denied a promotion. Although she later heard from another plaintiff that defendants made comments about her age, no one ever said anything about her age in front of her.

**\*2** Harris also testified that she was diagnosed with [multiple sclerosis](#) in 1988. She used a four-pronged cane to walk, and her hands shook. Although no one ever commented on her disability in her presence, she believed that some of the discriminatory treatment she experienced was based on this handicap.

Plaintiff Drucz was assigned to the service center's cash office in June 1993. She testified that she received little training. Drucz suffered medical problems and, because of the stress involved in the cash office work, she did not think she could perform the work. Defendant Hartley explained to her that she needed cross-training in the cash office duties so that the cash office would be covered if there were ever an involuntary layoff and less senior employees, who were experienced in the cash office, were laid off. Drucz disputed this reason, and testified that she was "set up."

In December 1993, Drucz began to suffer chest pains while at work. She apparently was hospitalized. She was to return to work in January 1994, but took a voluntary layoff until May 1994. When Drucz returned, she was assigned to Harris' former job of answering the telephones. As with Harris, Drucz claims that she was told that she was solely responsible for answering all telephone calls. Drucz alleges that defendants "hollered" "Virginia, get the phone," and "keep those fingers moving." She was never disciplined or demoted and was never denied a promotion. Drucz never heard anyone make any comment about her age, but testified that Harrington talked down to her, treating her "like a two-year-old." In August or September 1994, Harrington told Drucz she was to work in the cash office or learn payroll. Drucz knew that these jobs would be stressful for her. She decided to retire because she was afraid the work would affect her health. She took a voluntary retirement in October 1994. She felt she was being discriminated against.

Urbanski testified that, on September 18, 1995, she was learning to complete time cards. A co-worker began to train her, but then apparently defendant Harrington took over. Harrington yelled at Urbanski to type a letter and, when Urbanski followed the instruction, Harrington hit a key to erase the letter and screamed the instruction again while beating her fist. According to Urbanski, Harrington yelled at her throughout the day and made comments about how long it was taking Urbanski to complete the job. Urbanski testified that there were other incidents where Harrington was rude to her and where she monitored the time Urbanski spent on her breaks. Urbanski testified that Harrington spoke to her in a belittling, degrading manner, although she could not recall specific words used by Harrington. Urbanski believed that Harrington's treatment of her was based on her age. Urbanski was never disciplined or demoted and was never denied a promotion or a pay raise to which she was entitled. Urbanski claims that she suffered a breakdown as a result of the September 1995 incident. She apparently went on medical leave at that time.

**\*3** Urbanski also testified that she heard people in the office, including defendants, refer to plaintiffs Harris and Drucz as "old fuddy-duddies," "old codgers," and "old fogies." She testified that defendant Hartley said Harris and Drucz "can't cut the mustard," that he "needs a faster, go-getter team," "rah, rah, rah." One time, Hartley told Urbanski to "get it or get out." According to Urbanski, Hartley made comments about Harris when Harris walked slowly through the room with her cane. He made fun of Harris behind Harris' back. One time, he pointed at Harris and then pointed his thumb toward the door, laughing. He commented that Harris, the "old fogy" should retire. Urbanski testified that these comments were always made behind Harris' back. She estimated that she heard these sorts of comments approximately six times over a two year period.

All three plaintiffs testified that defendants treated two other, younger employees more favorably. These employees were permitted to take lunch breaks and then eat lunch at their desks, after their breaks, and take extended lunches. Plaintiffs did not believe they could have done the same. The other employees were not treated the same as plaintiffs.

The trial court granted defendants' motions for summary disposition on each of plaintiffs' claims. A decision on a motion for summary disposition is reviewed de novo. [Singerman v Municipal Serv Bureau, Inc,](#) 455 Mich.

135, 139; 565 NW2d 383 (1997). To rule on the motion, the trial court must consider the pleadings, affidavits, depositions and all other documentary evidence submitted by the parties. *Id.* The court must view the evidence and all reasonable inferences drawn from the evidence in favor of the nonmoving party, giving the nonmoving party the benefit of any reasonable doubt. *Morales v. Auto-Owners Ins Co,* 458 Mich. 288, 294; 582 NW2d 776 (1998).

As an initial matter, in support of their argument that the trial court's decision should be affirmed, defendants argue that defendant Harrington does not fall within the definition of employer as used in the Civil Rights Act and, therefore, cannot be held liable in her individual capacity. We agree. The trial court did not reach this issue, but defendants raised it in their motions and this Court may consider it on appeal. *Peterman v. Dep't of Natural Resources,* 446 Mich. 177, 183; 521 NW2d 499 (1994).

The Civil Rights Act defines "employer" as a person who has one or more employees, and includes an agent of that person. MCL 37.2201(a); MSA 3.548(201)(a). The HCRA definition of "employer" is nearly identical to that in the Civil Rights Act. M.C.L. § 37.1201(b); MSA 3.550(201)(b). A person who is responsible for making personnel decisions is an agent of an employer. *Jenkins v Southeastern Mich. Chapter, American Red Cross,* 141 Mich.App 785, 799-800; 369 NW2d 223 (1985). Although a supervisor need not have complete authority over hiring, firing, promoting or disciplining to be considered an agent, the supervisor must have "significant control" of those duties. *Champion v. Nationwide Security, Inc,* 205 Mich.App 263; 517 NW2d 777 (1994), rev'd on other grounds 450 Mich. 702; 545 NW2d 596 (1996); *Kauffman v. Allied Signal, Inc,* 970 F.2d 178, 186 (CA 6, 1992).

**\*4** Defendant Harrington was the human resources assistant. Her job responsibilities, as stated in her job description, did not include supervisory functions. She performed administrative duties related to personnel matters. Harrington admitted that she gave direction to plaintiffs when asked to do so by Hartley. However, there is no evidence that plaintiffs reported to her or that Harrington had any authority over firing, hiring, disciplining or promoting plaintiffs. Because plaintiffs failed to establish that Harrington had "significant control" over them, we agree that Harrington is not an "agent" and cannot be held liable under the Civil Rights Act or HCRA as an employer.

We now turn to plaintiffs' age discrimination claims. Under the act, an employer shall not:

> (a) Fail or refuse to hire, or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. MCL 37.2202(1); MSA 3.548(202)(1).

We note that plaintiffs appear to combine several different discrimination theories on appeal. However, in response to defendants' motions for summary disposition, plaintiffs directly approached only a claim for intentional discrimination, using the elements required to establish a claim for disparate treatment. See *Reisman v. Wayne State Univ Regents,* 188 Mich.App 526, 538; 470 NW2d 678 (1991). In support of their claims for intentional discrimination, plaintiffs proceeded, in part, on the theory that defendants created a hostile work environment based on their age-based discrimination of plaintiffs, although they did not specifically set forth a claim based on hostile work environment and did not specifically argue the elements for such a claim.

Disparate treatment claims may be established through direct or indirect evidence. *Town v. Michigan Bell Telephone Co,* 455 Mich. 688, 694-695, 707; 568 NW2d 64 (1997); *Wilcoxon v. Minn Mining & Mfg Co,* 235 Mich.App 347, 358-361; 597 NW2d 250 (1999). To support a case of intentional discrimination, an employee is required to prove by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment decision; (3) the defendant was predisposed to discriminating against members of her protected class; and (4) age was a determining factor of the adverse employment decision. *Id.* at 360-361.

Here, plaintiffs allege that defendants engaged in a pattern of discrimination to such an extent that plaintiffs were constructively discharged, by being forced to retire or caused to become "psychologically disabled." An employee who establishes a constructive discharge is treated as if her employer actually fired her. *Champion v. Nation Wide Security,* 450 Mich. 702, 710; 545 NW2d 596 (1996). A constructive discharge will be found only when the conduct of the employer or the employer's agent's is so extreme that a reasonable person in the position of the employee would feel compelled to resign. *Id.*

**\*5** Plaintiffs presented evidence that Hartley referred to Harris and Drucz behind their backs as "old codgers," "old fogies," and "fuddy-duddies" and that he commented that Harris, the "old fogy," should retire. Harris and Drucz were not aware of these comments at the time of their retirement; they only learned of the comments from plaintiff Urbanski years later in the course of this lawsuit. Plaintiffs presented evidence that defendant Harrington, who we have found was not an agent of Sears, was often rude and that she often raised her voice when instructing them to do their jobs. None of the plaintiffs ever complained about Harrington's or Hartley's conduct. We are not convinced that the challenged conduct in this case was so extreme that a reasonable person would feel compelled to resign.

Plaintiffs also argue on appeal that there was a hostile work environment. They contend that this issue is preserved because they raised it below. However, our review of plaintiffs' pleadings and arguments in response to defendants' motions for summary disposition establishes that plaintiffs failed to directly raise a claim of discrimination based on a theory of hostile work environment. This Court need not review a claim on a theory different from that on which the claim was tried. *Head v. Phillips Campers Sales,* 234 Mich.App 94, 110; 593 NW2d 595 (1999). In any event, we find that the challenged conduct was not so egregious that a reasonable person would find that, in the totality of circumstances, the comments and treatment were sufficiently severe or pervasive to create a hostile work environment. *Quinto v. Cross & Peters Co,* 451 Mich. 358, 369; 547 NW2d 314 (1996); *Radtke v. Everett,* 442 Mich. 368, 394; 501 NW2d 155 (1993).

Next, plaintiffs argue that plaintiff Harris presented a question of fact whether defendants discriminated against her based on handicap. We disagree. To prove a claim for handicap discrimination, a plaintiff must demonstrate (1) that she is handicapped as defined in the HCRA; (2) that the handicap is not related to her ability to perform her job; and (3) that she was discriminated against in one of the ways set forth in the statute. *Chmielewski v. Xermac, Inc,* 457 Mich. 593, 602; 580 NW2d 817 (1998). At the time plaintiffs brought their claims, "handicap" was defined as a determinable physical or mental characteristic that substantially limits one or more major life activities and is unrelated to the individual's ability to perform the duties of a particular job. MSA 37.1103; MSA 3.550(103). In determining whether a person's condition substantially limits a major life activity the person's condition is assessed as it actually exists, that is, in its medicated state. *Chmielewski, supra* at 613.

Plaintiff Harris argues that the "major life activities" of walking and writing were affected by her multiple sclerosis. The determination whether an impairment "substantially limits" a major life activity requires consideration of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect. *Lown v. JJ Eaton Place,* 235 Mich.App 721, 728; 598 NW2d 633 (1999). Here, the evidence does not support Harris' claim that her impairment substantially limited her identified major life activities of walking and writing when compared to the average person. *Id.* at 731. The evidence establishes that Harris was able to walk steadily with a cane. She alleged no other restrictions to her mobility. She was able to write, although her handwriting was sometimes shaky. Harris has nor demonstrates that her impairment was severe enough to be considered a substantial limitation. We agree with the trial court that Harris is not handicapped as that term is defined by the statute.

**\*6** Harris also argues that defendants *perceived* her as handicapped under the HCRA. To establish such a claim, a plaintiff must establish that the defendant believed the plaintiff to be "disabled" within the meaning of the statute. *Chiles v. Machine Shop, Inc,* ___ Mich.App ___; ___ NW2d ___ (Docket No. 207395, issued 11/5/99), slip op at 6. A plaintiff must show more than merely that an employer thought the plaintiff was somehow impaired. *Id.* The plaintiff must present "evidence that the defendant regarded the plaintiff as having an impairment that substantially limited a major life activity-just as with an actual disability." *Id,* citing *Murphy v. UPS, Inc,* 527 U.S. 516; 119 S Ct

2133; 144 L.Ed.2d 484 (1999). A perceived disability is normally one involving a disability with some kind of unusual stigma attached, such as a mental disability, where negative perceptions are more likely to influence the actions of an employer. *Chiles, supra,* slip op at 6-7.

Harris failed to present evidence to demonstrate that defendants perceived her as handicapped within the HCRA. Hartley admitted that he knew Harris used a cane or walker to walk, but he did not know she had multiple sclerosis. He testified that the only thing he noticed as far as physical limitations was that her handwriting was sometimes difficult to read. The only mobility limitation he noticed was that she needed a cane to walk. The trial court did not err in finding that Harris was not handicapped within the meaning of the HCRA.

Finally, plaintiff Urbanski argues that the trial court erred in dismissing her claim that defendants retaliated against her for filing a claim under the WDCA. We disagree. An employee may have a cause of action against an employer for retaliatory discharge when the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment. *Phillips v. Butterball Farms Co,* 448 Mich. 239, 244; 531 NW2d 144 (1995). The WDCA prohibits an employer from discharging an employee because the employee instituted a proceeding under the act. MCL 418.301(11); MSA 17.237(301)(11). "[T]he discharge of an employee who is receiving worker's compensation benefits due to a particular on-the-job injury, if it is in retaliation for that employee having sought, in good faith, additional benefits based on the injury, constitutes a retaliatory discharge in violation of the WDCA." *Lamoria v Health Care & Retirement Corp,* 230 Mich.App 801, 819; 584 NW2d 589 (1998), vacated and reinstated in pertinent part 233 Mich.App 560; 593 NW2d 699 (1999).

The burden is on the plaintiff to establish a causal connection between the filing of her worker's compensation claim and the adverse employment action. *Chiles, supra,* slip op at 3. Urbanski has failed to present evidence establishing this causal connection. The testimony, that plaintiff Urbanski was told by a coworker that Harrington "had an attitude" about Urbanski's receiving benefits and Urbanski's speculation that Harrington acted in retaliation, falls short of establishing a genuine issue of material fact. Summary disposition was appropriate.

**\*7** Affirmed.

**All Citations**

Not Reported in N.W.2d, 2000 WL 33421411

---

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.54 Filed 06/30/21 Page 9 of 13

Simplicean v. SSI (US), Incorporated, Not Reported in Fed. Supp. (2018)
2018 Fair Empl.Prac.Cas. (BNA) 289,565

2018 WL 3861736
United States District Court, E.D.
Michigan, Southern Division.

Ileana SIMPLICEAN, Plaintiff,
v.
SSI (US), INCORPORATED, et al., Defendants.

Case No. 18-cv-11297
|
Signed 08/14/2018

**Attorneys and Law Firms**

Sam G. Morgan, Ahmad A. Chehab, Gasiorek Morgan Greco McCauley & Kotzian PC, Farmington Hills, MI, for Plaintiff.

Benjamin Mark Ostrander, Daniel John Fazio, Winston & Strawn LLP, Chicago, IL, Daniel L. Villaire, Jr., Jonathan F. Karmo, Miles T. Macik, Howard & Howard Attorneys PLLC, Royal Oak, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE [#6] AND ALLOWING PLAINTIFF TO FILE A MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Hon. Gershwin A. Drain, United States District Judge

### I. INTRODUCTION

*1 Plaintiff, Ileana Simplicean, is a licensed attorney residing in Wayne County. Defendant SSI (US) Inc. ("SSI") is an executive search and leadership consulting firm that identifies, attracts, and recommends individuals for leadership and executive level positions at corporations. Visteon retained SSI to recruit its new General Counsel. Plaintiff filed the present action against Defendant SSI Inc. and its former employees Francois Truc and Pierre-Edouard Paquet in March of 2018 alleging gender discrimination in hiring.

Presently before the Court is Defendant SSI's Motion to Dismiss. [Dkt. No. 6]. For the reasons discussed below, this Court will grant Defendant's Motion to Dismiss without prejudice and dismiss Plaintiff's complaint against SSI and individual defendants Truc and Paquet. Furthermore, this Court will allow Plaintiff to file a motion for leave to amend her complaint.

### II. FACTUAL BACKGROUND

In 2015, Visteon Corporation hired Defendant SSI to identify candidates for a position as Visteon's General Counsel. Dkt. No. 1, pg. 23 (Pg. ID 23). Francois Truc and Pierre-Paquet were the SSI employees who handled the majority of Visteon's search for a new General Counsel. *Id.* Defendant scouted Plaintiff for the General Counsel position, identifying her as a "perfect candidate." *Id.* Paquet informed Plaintiff that first she would interview with Truc, and then she would meet with Visteon's executive team if her interview with Truc went well. *Id.* at pg. 24 (Pg. ID 24). After Plaintiff interviewed with Truc, Defendant informed her that she was on the short list of three candidates that Visteon would be considering for the General Counsel position. *Id.* Two male candidates were on the short list with Plaintiff. *Id.*

Around November 20, 2015, Truc notified Plaintiff that Visteon had decided to conduct final interviews with the other two candidates and not Plaintiff. *Id.* Truc also informed Plaintiff that Visteon's senior management viewed the male candidates as leaders and Plaintiff as a "support" or a "second in command." *Id.* Visteon ultimately hired a male for its General Counsel position. *Id.* at pg. 25 (Pg. ID 25). Visteon has never had a woman in its General Counsel position. *Id.* at pg. 25 (Pg. ID 25). Plaintiff believes that Visteon's senior management told Truc and Paquet that it did not want a female General Counsel. *Id.*

On March 26, 2018, Plaintiff filed the present complaint in the Circuit Court for Wayne County against Truc, Paquet, and SSI. Dkt. No. 1, pg. 29 (Pg. ID 29). Plaintiff served SSI with the summons and complaint, but Plaintiff has not yet served Truc or Paquet. Plaintiff's complaint brings a single count of gender discrimination under the Michigan Elliot Larsen Civil Rights Act ("ELCRA"). *Id.* at pg. 25 (Pg. ID 25). Plaintiff alleges that Defendant, as an agent for Visteon, is liable for Visteon's gender discrimination against her. *Id.* Additionally and/or alternatively, Plaintiff alleges that Defendant is liable as an employment agency. *Id.* Plaintiff also alleges that Defendant aided and abetted Visteon in discriminating against her because of her sex. *Id.* at pg. 26 (Pg. ID 26). On April 25, 2018, Defendant SSI removed the case to this Court based on diversity jurisdiction. *Id.* at pg. 1 (Pg. ID 1). On May 22, 2018, Defendant filed its Motion to Dismiss. Dkt. No. 6. Plaintiff

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.55 Filed 06/30/21 Page 10 of 13

Simplicean v. SSI (US), Incorporated, Not Reported in Fed. Supp. (2018)
2018 Fair Empl.Prac.Cas. (BNA) 289,565

opposed the Motion on June 12, 2018. Defendant filed its reply on June 26, 2018. Dkt. No. 13.

### III. LEGAL STANDARD

 *2  Fed. R. Civ. P. 12(b)(6) governs motions to dismiss. The Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. See Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "allege enough facts to make it plausible that the defendant bears legal liability." Agema v. City of Allegan, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." Riverview Health Inst., LLC v. Med. Mut. of Ohio, 601 F.3d 505, 512 (6th Cir. 2010).

### IV. DISCUSSION

Plaintiff's complaint asserts three theories of liability. First, Plaintiff asserts that Defendant is liable as an agent of Visteon. Dkt. No. 1, pg. 26 (Pg. ID 26). Second, Plaintiff argues that Defendant is liable as an employment agency. *Id.* Third, Plaintiff states that Defendant is liable because it aided and abetted Visteon's discrimination. *Id.*

   1. Agency

Plaintiff's complaint alleges that Defendant violated Section 202 of the ELCRA "as agents of Visteon" by "failing or refusing to hire or recruit, or ... discriminating against Plaintiff with respect to employment ... because of her sex." Dkt. No. 1, pg. 26 (Pg. ID 26). Defendant argues that to bring an action against a non-employer under the ELCRA, the non-employer must have significant control over the firing, hiring, disciplining, or promoting of the plaintiff. Dkt. No. 6, pg. 16 (Pg. ID 54). Defendant states that it did not have significant control over Visteon's hiring decision. *Id.*

The ELCRA states that "[a]n employer shall not ... [f]ail or refuse to hire or recruit ... an individual with respect to employment ... because of ... sex...." M.C.L. § 37.2202(1)(a). Under the ELCRA, the definition of an employer includes agents of an employer. *Id.* at § 37.2201(a). Plaintiff alleges that Defendant, as an agent of Visteon, is liable for Visteon's failure to employ her because of her sex. Dkt. No. 1, pg. 26 (Pg. ID 26).

The Sixth Circuit states that under the ELCRA, a supervisor can be liable as an agent for employment discrimination if he or she "is responsible for making personnel decisions." See Casias v. Wal-Mart Stores, Inc., 695 F.3d 428, 434 (6th Cir. 2012). Michigan courts have held the same. The Michigan Supreme Court holds that a non-employer defendant can be liable under the ELCRA if the defendant "affected or controlled a term, condition, or privilege of the worker's employment." McClements v. Ford Motor Co., 702 N.W.2d 166, 174–75 (Mich. 2005). The Michigan Court of Appeals has noted that a person is an agent for a company if he "has responsibility for making personnel decisions." See Jenkins v. Se. Mich. Chapter, Am. Red Cross, 369 N.W.2d 223, 230 (Mich. Ct. App. 1985). Similarly, the Eastern District of Michigan has followed the principle that an individual is an agent under the ELCRA if s/he is responsible for personnel decisions. Comiskey v. Auto. Indus. Action Grp. (A.I.A.G.), 40 F. Supp. 2d 877, 891 (E.D. Mich. 1999); Odigbo v. Nw. Airlines, Inc., 8 F. Supp. 2d 660, 664 (E.D. Mich. 1998) (holding "that the term 'agent' as used in the [ELCRA] is someone in a supervisory capacity who exercises significant control over the plaintiff's hiring, firing, or conditions of employment."). The *Odigbo* court likewise held that agents are individuals whom an employer has delegated "employer-like functions" to. See *Odigbo*, 8 F. Supp. 2d at 665.

 *3  Here, Plaintiff's complaint does not allege sufficient facts to make it plausible that Defendant was an agent of Visteon that can be held liable under the ELCRA. Plaintiff's complaint states that "SSI is an executive search and leadership consulting firm that specializes in identifying, attracting and recommending individuals for senior leadership and executive-level positions with corporate clients...." Dkt. No. 1, pg. 23 (Pg. ID 23). The complaint states that Visteon hired Defendant to identify candidates for employment as Visteon's General Counsel. *Id.* SSI employees Truc and Paquet subsequently recruited Plaintiff for the General Counsel position. *Id.* The complaint then states that *Visteon's* senior management decided to interview the other two male

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.56 Filed 06/30/21 Page 11 of 13

Simplicean v. SSI (US), Incorporated, Not Reported in Fed. Supp. (2018)
2018 Fair Empl.Prac.Cas. (BNA) 289,565

candidates instead of interviewing Plaintiff. *Id.* at pg. 24 (Pg. ID 24). Defendant's employee, Truc, communicated to Plaintiff Visteon's decision to exclude Plaintiff from further consideration for the position. *Id.* However, Defendant did not make the decision to exclude Plaintiff from further interviews nor do the facts allege that it had the authority to do so. The extent of Defendant's control was its control to recruit candidates of its choice to present to Visteon. Defendant fulfilled this role when it recruited Plaintiff.

Thus, Plaintiff's complaint alleges that Defendant only had the authority to recruit General Counsel candidates for Visteon. Her complaint does not allege that Defendant had the authority to hire Plaintiff or exclude her from consideration as Visteon's General Counsel. The most that Plaintiff's complaint alleges is that Defendant told Plaintiff that Visteon did not want to hire her because Visteon viewed her as a "support" or "second in command." However, even this allegation, taken as true, does not sufficiently allege that Defendant had significant control over Visteon's interview decisions or ultimate hiring decision. Plaintiff's complaint alleges that Defendant communicated a message from Visteon to Plaintiff that was discriminatory in nature. However, Defendant had no control over the message that Visteon chose to convey to Plaintiff.

The facts from Plaintiff's complaint, taken as true, do not make it plausible that Defendant made personnel decisions, controlled a term of Plaintiff's employment, or exercised significant control over Plaintiff's hiring. Therefore, the facts as alleged do not make out a plausible claim that Defendant is liable for employment discrimination as Visteon's agent.

  2. Employment Agency

Plaintiff's complaint states that under Section 203 of the ELCRA, SSI, as an employment agency, was "prohibited from failing or refusing to refer or place for employment, or otherwise discriminate against, Plaintiff because of her sex." Dkt. No. 1, pg. 26 (Pg. ID 26). Defendant argues that it is not an employment agency under the ELCRA. *See* Dkt. No. 6, pg. 20 (Pg. ID 58). Even if it is an employment agency, Defendant restates that it did not have significant control over Visteon's hiring decision to be liable for discrimination. *Id.*

Section 203 of the ELCRA states that "an employment agency shall not fail or refuse to procure, refer, recruit, or place for employment, or otherwise discriminate against, an individual because of ... sex...." [M.C.L. § 37.2203](). An employment agency is defined as "a person regularly undertaking with or without compensation to procure, refer, recruit, or place an employee for an employer or to procure, refer, recruit, or place for an employer or person the opportunity to work for an employer and includes an agent of that person." *Id.* at § 37.2201.

Assuming that Defendant is an employment agency under the ELCRA, Plaintiff nevertheless does not allege sufficient facts to support the conclusion that Defendant violated Section 203 of the ELCRA. Plaintiff's complaint does not support a plausible finding that Defendant failed or refused to recruit her because of her sex. On the contrary, Plaintiff's complaint states that Defendant scouted her for the position of Visteon's General Counsel Dkt. No. 1, pg. 23 (Pg. ID 23). Therefore, Defendant successfully recruited her for the position. Visteon made the decision not to hire Plaintiff after Defendant had recruited her. *Id.* at pgs. 23–24 (Pg. ID 23–24).

Further, the Eastern District of Michigan and other Michigan courts have declined to find employment agencies liable when the agency did not have significant control over the adverse employment action. *See [Bond v. Sodecia N.A., Inc.](), [No. 12-cv-15160, 2014 WL 2864895, at \*12 (E.D. Mich. June 24, 2014)]()* (finding that a staffing agency was not liable in part because there was no evidence that it had any control over the plaintiff's working environment); *[Seudeal v. Ciena Health Care Mgmt.](), [Docket No. 300144, 2011 WL 4953517, at \*1–2 (Mich. Ct. App. Oct. 18, 2011)]()* (concluding that a management firm was not liable under the ELCRA in part because there was no evidence that it "affected or controlled a term, condition, or privilege of [the] plaintiff's employment."). As determined in this Court's analysis of Plaintiff's agency theory, above, Plaintiff's complaint does not allege sufficient facts to find that Defendant had significant control over any adverse employment action.

**\*4** Next, Plaintiff's complaint states that Defendant dropped her as a prospective candidate from executive positions with other clients. Dkt. No. 1. Pg. 25 (Pg. ID 25). Plaintiff's response additionally alleges that Defendant "blackball[ed]" her from any other executive positions that may be available with Defendant's other clients. Dkt. No. 11, pg. 14 (Pg. ID 187). These allegations are conclusory in nature and devoid of any facts to substantiate them. Therefore, these allegations are insufficient to survive Defendant's Motion to Dismiss.

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.57 Filed 06/30/21 Page 12 of 13

Simplicean v. SSI (US), Incorporated, Not Reported in Fed. Supp. (2018)
2018 Fair Empl.Prac.Cas. (BNA) 289,565

For the above reasons, Plaintiff's complaint fails to plead a sufficient claim of gender discrimination under an employment agency theory of the ELCRA.

### 3. Aiding and Abetting

Plaintiff's complaint asserts that pursuant to Section 701(b) of the ELCRA, Defendant was "prohibited from assisting, aiding and/or abetting Visteon Corporation in discriminating against Plaintiff because of her sex when considering her application or candidacy for the position of General Counsel." Dkt. No. 1, pg. 26 (Pg. ID 26). Plaintiff alleges that Defendant intentionally excluded her from further consideration for the position of Visteon's General Counsel at Visteon's request because of her sex. *Id.* Defendant repeats its earlier argument that to bring an action against a non-employer under the ELCRA, the non-employer must have significant control over the firing, hiring, disciplining, or promoting of the plaintiff. Dkt. No. 6, pg. 16 (Pg. ID 54). Defendant asserts that it did not have significant control over Visteon's hiring decision. *Id.*

Section 701 of the ELCRA states that "[t]wo or more persons shall not conspire to, or a person shall not ... [a]id, abet, incite, compel, or coerce a person to engage in a violation of this act." M.C.L. § 37.2701(b). The Michigan Court of Appeals has followed the Third Circuit's test to state a cognizable claim of aiding and abetting under the ELCRA. To state a valid claim, a plaintiff must show that:

> (1) the party aided by the defendant performed a wrongful act that caused an injury, (2) the defendant had general awareness "of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance," and (3) the defendant knowingly and substantially assisted the principal act of discrimination.

*Fortenberry v. Jenkins-Dick Corp.*, No. 242225, 2003 WL 22849770, at *2 (Mich. Ct. App. Dec. 2, 2003) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) ). In this case, Plaintiff's complaint does not allege facts sufficient to pass this test. Even assuming Plaintiff alleges facts sufficient to meet elements one and two, Plaintiff's complaint does not allege sufficient facts to meet element three. According to Plaintiff, the principal act of discrimination was deciding to take Plaintiff out of consideration for the General Counsel position because she is female. *See* Dkt. No. 1, pg. 25 (Pg. ID 25). However, Plaintiff's complaint alleges that Visteon was the entity that decided not to continue interviews with Plaintiff. *See* Dkt. No. 1, pg. 24 (Pg. ID 24) (stating that Truc told Plaintiff that *Visteon's* senior management viewed her as a support or second in command). Defendant conveyed the decision to Plaintiff, but did not knowingly and substantially assist Visteon in its decision to take Plaintiff out of consideration due to her sex. To the contrary, Defendant was the entity that recruited Plaintiff. Then, Defendant merely communicated to Plaintiff Visteon's decision to exclude Plaintiff from further consideration for the job. Plaintiff's complaint alleges no facts to conclude that Defendant had influence over Visteon's decision to exclude Plaintiff from the General Counsel position because she is female.

**\*5** Therefore, Plaintiff's complaint fails to plead sufficient facts to make a plausible claim of Defendant's liability under an aiding and abetting theory. This Court will grant Defendant's Motion to Dismiss against SSI because Plaintiff's gender discrimination claim fails under all three theories that she asserts. Additionally, this Court will dismiss Plaintiff's complaint against individual defendants Francois Truc and Pierre-Edouard Paquet, as their alleged liability is identical to the alleged liability of Defendant SSI.

### 4. Leave to Amend

Plaintiff requests this Court grant her leave to amend her complaint if this Court is inclined to grant Defendant's Motion. Dkt. No. 11, pg. 25 (Pg. ID 198). Defendant asserts that this Court should deny leave to amend because any amendment would be futile. Dkt. No. 13, pg. 8 (Pg. ID 209).

A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 440 (6th Cir. 2016). Plaintiff wishes to amend her complaint to add more facts related to Visteon's alleged discriminatory comments that Defendant communicated to her and Defendant's alleged blackballing of Plaintiff from further executive positions. The Court will allow Plaintiff to file a motion for leave to file a first amended complaint. Plaintiff must file a motion for leave to amend by **August 22, 2018**. Plaintiff must attach her proposed amended complaint as an exhibit to her motion for leave to amend. Defendant may file a response no later than **September 5, 2018**. Plaintiff's reply is due by **September 12, 2018**. This Court will hold a motion hearing and scheduling conference on this matter on **Wednesday, September 19 at 10:00 am**.

Case 2:21-cv-11534-PDB-APP ECF No. 1-6, PageID.58 Filed 06/30/21 Page 13 of 13

Simplicean v. SSI (US), Incorporated, Not Reported in Fed. Supp. (2018)
2018 Fair Empl.Prac.Cas. (BNA) 289,565

**V. CONCLUSION**

For the reasons discussed herein, the Court will GRANT Defendant's Motion and dismiss Plaintiff's complaint against SSI, Truc, and Paquet without prejudice. This Court will allow Plaintiff to file a motion for leave to file a first amended complaint.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3861736, 2018 Fair Empl.Prac.Cas. (BNA) 289,565

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.